## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Hector Santiago,                                     Case No.  1:23-cr-00399
                                                                          1:25-cv-01306
             Defendant-Petitioner,

       -vs-

                                                     JUDGE PAMELA A. BARKER
United States of America,

             Plaintiff-Respondent.           MEMORANDUM OPINION & ORDER

       This matter is before the Court upon Defendant-Petitioner Hector Santiago's ("Santiago" or

"Defendant-Petitioner") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §

2255, filed on June 24, 2025 (the "Motion").  (Doc. No. 47.)  On July 24, 2025, the United States of

America (the "Government" or "Plaintiff-Respondent") filed the Government's Response in

Opposition to Defendant's Motion (the "Opposition").  (Doc. No. 48.)  Santiago did not file a Reply

in support of his Motion.

       Also pending is Santiago's Motion to Amend 28 U.S.C. § 2255 Motion Pursuant to Rule

15(c)(1)(B), filed on August 28, 2025 (the "Motion to Amend").  (Doc. No. 50.)  On September 26,

2025, the Government filed its Response in Opposition to Santiago's Motion to Amend (the

"Opposition to the Motion to Amend").  (Doc. No. 51.)  Santiago did not file a Reply in support of

his Motion to Amend.

       For the following reasons, Santiago's Motion (Doc. No. 47) and Motion to Amend (Doc.

No. 50) are DENIED.

## I.      Background

On September 7, 2022, Santiago was reported allegedly threatening to fire a black pistol at a victim in a domestic dispute.  (Plea Agreement, Doc. No. 23 at PageID# 69.)[1]  Because of that incident, Cuyahoga County Crime Stoppers identified him, and the Ohio Adult Parole Authority learned that he had a warrant for being a violator at large.  (*Id.*)  Federal agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF Agents") conducted a surveillance at the intersection of W. 97th Street and Almira Ave., in Cleveland, Ohio, as that is where the September 7 incident had allegedly occurred.  (*Id.*)  The ATF Agents were looking for a black BMW registered to Santiago, which they found illegally parked due to its expired registration tags.  (*Id.*)  The ATF Agents informed the Cleveland Police Department that the black BMW was illegally parked due to its expired registration tags, at which point CPD arrived to tow the car for the traffic violation.  (*Id.*)  Santiago's cousin arrived at the scene and received the tow inventory sheet, which he gave to Santiago's mother, who had also arrived at the scene.  (*Id.* at PageID# 70.)   Santiago's mother began travelling to the local Bureau of Motor Vehicles (BMV) and Santiago followed on a motorcycle.  (*Id.*)  ATF Agents also followed Santiago's mother, where they observed her meeting with Santiago outside of the BMV and handing him the tow sheet.  (*Id.*) Then, they entered the BMV together.  (*Id.*)

The ATF Agents had prepared to arrest Santiago when he left the BMV.  (*Id.*)  When he exited the BMV, the ATF Agents asked him to stop, but Santiago fled.  (*Id.*)  During the ensuing chase, the ATF Agents "saw him repeatedly grab toward his chest and [Santiago] ignored commands to stop."  (*Id.*)  "In a chest pocket of Santiago's pack," the ATF Agents found a stolen "Ruger LCPII semi-automatic pistol, serial no. 380350186, loaded with 5 rounds of .380 ammunition" and in his car they

---

[1] These facts are set forth in the Plea Agreement, signed by Santiago on December 18, 2023.

found a "Glock 17, 9mm semi-automatic pistol, serial no. AEPK11, loaded with thirty (30) rounds of 9mm ammunition in an extended magazine." (*Id.*)  Santiago was booked for a parole violation.  (*Id.*)

On July 25, 2023, a Federal Grand Jury indicted Santiago for the crime of Felon in Possession of Firearm and Ammunition, 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  (Indictment, Doc. No. 1 at PageID# 1.)  On July 27, 2023, Santiago pled not guilty to the indictment.  (Non-Doc. Entry of July 27, 2023.)  That same day, the Court appointed Attorney Nancy T.  Jamieson as counsel for Santiago.  (*Id.*)  She was terminated as his counsel of record as of August 8, 2023, when Attorney Michael H. Peterson appeared for Santiago for his Detention Hearing on August 9, 2023.  (Non-Doc. Entry of Aug. 9, 2023.)  On December 13, 2023, Attorney Peterson filed a Notice of Intent to Plea on behalf of Santiago, and the Court set a Change of Plea Hearing for December 19, 2023, which the Court continued to December 20, 2023 (the "Change of Plea Hearing").  (Doc. No. 22.)  At the Change of Plea Hearing, Santiago pled guilty to Count 1 of the Indictment for violating § 922(g)(1).  (Non-Doc. Entry of Dec. 20, 2023.)  On December 18, 2023, Santiago, Attorney Peterson, and Attorney Adam Joines had executed the Plea Agreement.  (Doc. No. 23.)  The Plea Agreement includes the following provision:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255.  Defendant expressly and voluntarily waives those rights, except as specifically reserved below.  Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; or (b) any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

(*Id.* at PageID# 68.)

On May 15, 2024, Attorney Peterson filed a Motion to Withdraw as counsel for Santiago. (Doc. No. 32.)  On May 30, 2024, the Court held a hearing on Attorney Peterson's Motion to Withdraw, which the Court granted.  (Non-Doc. Entry of May 30, 2024.)  That same day, the Court appointed a Federal Public Defender to represent Santiago, and on May 31, 2024, Attorney David E. Johnson appeared for Santiago.  (Doc. No. 33.)

On September 12, 2024, the Court sentenced Santiago to a term of 71 months of imprisonment.  (Non-Doc. Entry of Sept. 12, 2024.)  The Presentence Investigation Report completed for purposes of the sentencing hearing demonstrated that prior to his conviction in the instant matter, Santiago had been convicted of the following offenses.  In 2007, Santiago was convicted of felonious assault in the Cuyahoga County Court of Common Pleas.  (Presentence Investigation Report, Doc. No. 41 at PageID# 214.)  In 2009, Santiago was convicted of assault in the Marion County Court of Common Pleas. (*Id.* at PageID# 215.)  In 2013, Santiago was convicted of burglary, robbery, and kidnapping in the Cuyahoga County Court of Common Pleas.  (Doc. No. 41 at PageID# 216.)

On June 24, 2025, Santiago filed his Motion on the basis that his conviction under § 922(g)(1) violated his Second Amendment rights.[2]  (Doc. No. 47.)  On July 24, 2025, the Government filed its Opposition.  (Doc. No. 48.)  On August 28, 2025, Santiago filed his Motion to Amend, writing that his "new claim is 'Ineffective Assistance of Counsel.'" (Doc. No. 50.) On September 26, 2025, the Government filed its Opposition to Santiago's Motion to Amend.  (Doc. No. 51.)

## II.    Standard of Review

### A.    Motion to Vacate under  28 U.S.C. § 2255

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced.

---

[2] Within the body of his Motion, Santiago claims that he filed his Motion "on or about May 19, 2025" but that is the date he signed his Motion, not the day he filed it.  (Doc. No. 47-1 at PageID# 286.)

Section 2255 sets forth four (4) grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] the court was without jurisdiction to impose such sentence, or [3] the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

To warrant relief under § 2255, a petitioner who pleaded guilty "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A court may only grant relief if the petitioner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).  If a factual dispute arises, the "court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999).  No hearing is required, however, "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, 1993 WL 406795 at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255."); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met only where the petitioner "offers more than a mere assertion of innocence.").

## B.  Fed. R. Civ. P. 15 Amendment

The Parties agree that Santiago's Motion to Amend should be evaluated under Fed. R. Civ. P. 15.  (Doc. No. 51 at PageID#s 320-21) (quoting *United States v. Clark*, 637 Fed. Appx. 206, 208 (6th

Cir. 2016) ("A motion to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15(a)[.]")). Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Morse v. McWhorter*, 290 F.3d 795, 799-800 (6th Cir. 2002). "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). However, a motion for leave to amend a pleading "may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 Fed. Appx. 438, 443 (6th Cir. 2014) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).

## III. Analysis

In Santiago's Motion, he does not base his habeas claim on ineffective assistance of counsel and instead only argues that his conviction under § 922(g)(1) was unconstitutional under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). In his Motion to Amend, however, he asserts that his "new claim 'is ineffective assistance of counsel'" based on Attorney Peterson's allegedly ineffective representation. (Doc. No. 50 at PageID# 315.) The way the Court reads his Motion to Amend, he claims Attorney Peterson rendered ineffective assistance by (1) failing to apprise Santiago of the effect of the waiver provision in the Plea Agreement, and (2) failing to file a motion advancing the *Bruen* arguments Santiago set forth in his original Motion. (*Id.* at PageID#s 315-16.)

This analysis proceeds as follows. First, in Section III.A., the Court addresses Santiago's two (2) ineffective assistance of counsel claims and concludes that because they both have no merit, his

6

Motion to Amend is futile and must be denied.  Specifically, in Section III.A.1., the Court first explains that his first ineffective assistance of counsel claim (based upon his assertion that Attorney Peterson never adequately apprised Santiago of the effect of his waiver) fails because the record flatly contradicts Santiago's contention that he did not understand the implications of his waiver.  Second, in Section III.A.2., the Court addresses the merits of his second claim (that Attorney Peterson failed to assert the unconstitutionality of § 922(g)(1) under *Bruen*).  There, the Court concludes that Attorney Peterson could not have provided ineffective assistance by declining to advance Santiago's *Bruen* argument because (1) Santiago's *Bruen* argument itself lacks merit in that he is "dangerous," and (2) even if Attorney Peterson had rendered ineffective assistance by failing to make the *Bruen* argument, Santiago has not shown how Attorney Peterson's failure was prejudicial.

In Section III.B., the Court then briefly addresses the merits of Santiago's underlying Motion. The Court concludes that his Motion must be denied because (1) Santiago waived his right to collaterally attack that conviction in the Plea Agreement, and (2) as set forth in the preceding section, Santiago's *Bruen* argument lacks merit because he is "dangerous."

> **A.    Santiago's Motion to Amend based on ineffective assistance of counsel is denied as futile.**

"In the habeas corpus context, 'amendments are futile where they seek to add claims that are time-barred, procedurally defaulted, or lack merit.'" *Cunningham v. Warden, Madison Corr. Inst.*, 2025 WL 562876 at *9 (S.D. Ohio Feb. 20, 2025) (quoting *Rouse v. Delbaso*, 2021 WL 11511516 at *1 n.1 (E.D. Pa. Mar. 15, 2021)) (collecting cases).  For the reasons below, the Court finds that Santiago's two (2) proposed ineffective assistance of counsel claims lack merit.

A petitioner may challenge a sentence "imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  The Sixth Amendment establishes that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

U.S. Const., amend. VI.  "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

A petitioner's claim for constitutionally ineffective assistance of counsel has two elements: (1) the petitioner's counsel performed deficiently, and (2) that deficiency prejudiced the defendant. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  A petitioner "must prove his allegation that his lawyers were constitutionally ineffective by a preponderance of the evidence."  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  First, "[t]o establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688).  "Counsel's performance is objectively unreasonable only where 'the identified acts or omissions were outside the wide range of professionally competent assistance, as determined by 'prevailing professional norms.'"  *United States v. Munoz*, 605 F.3d 359, 376 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689)).

Second, "the defendant then must show prejudice: 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Carson v. United States*, 88 F.4th 633, 638 (6th Cir. 2023) (quoting *Strickland*, 466 U.S. at 694)).  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112, (2011).  "To satisfy the prejudice prong in the context of a guilty plea," the defendant is "required to 'show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Shakir v. United States*, 2021 WL 7210370 at *3 (6th Cir. Sept. 20, 2021) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (same); *United States v. Steele*, 2025 WL 2799418 at *5 (N.D. Ohio Oct. 1, 2025).

8

Additionally, "[g]iven the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). "[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 1999 WL 1252916 at *3 (6th Cir. Dec. 14, 1999). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004) (cleaned up).

1. **Attorney Peterson did not fail to adequately apprise Santiago of the effect of the waiver provision in the Plea Agreement.**

As noted above, in Santiago's Motion, he initially only challenges the constitutionality of his conviction pursuant to *Bruen*, but does not raise ineffective assistance of counsel as the basis for his Motion. (Doc. No. 47.) In its Opposition, the Government responds that Santiago waived his right to file his Motion by signing the Plea Agreement and that he acknowledged that he understood the waiver. (Doc. No. 48 at PageID#s 294-95.) Then, in his Motion to Amend, Santiago moves pursuant to Fed. R. Civ. P. 15(c)(1)(B) to amend his original Motion, arguing that his "new claim 'is ineffective assistance of counsel.'" (Doc. No. 50 at PageID# 315.) Therein, he asserts that

> Mr. Peterson was ineffective when he failed to explain to him exactly what rights he was waiving, how waiving those rights could effect [sic] him in future and helping him or giving him the proper legal advise [sic] to understand what he was agreeing to relinquish in exchange for promises made by the united states in the plea agreement.

(*Id.*) In the Government's Opposition to Santiago's Motion to Amend, the Government argues that Santiago "cannot show that his attorney made a mistake in failing to advise him of any rights because he received a second attorney at his own request." (Doc. No. 51 at PageID# 324.) Although he pleaded gulty, the Government notes that Santiago

> could have, and presumably did, explore options with his new attorney related to his *Bruen* claim. He could have discussed whether he could seek to withdraw his plea, file his *Bruen* claim, or seek to appeal. Santiago was afforded additional counsel prior to

sentencing.   He cannot now claim his intital attorney's actions were a mistake he later discovered after conviction.

(*Id.*)

The Court agrees with the Government and holds that Attorney Peterson did not provide ineffective assistance of counsel because the relevant circumstances surrounding Santiago's guilty plea show that he entered into the Plea Agreement knowingly and voluntarily.

It is well-established that criminal defendants may waive their right to appeal or collaterally attack their sentence as part of a plea agreement.  *See United States v. Hollins-Johnson*, 6 F.4th 682, 683 (6th Cir. 2021) (quoting *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004)) ("Criminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily[.]"); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) ("[W]e find that Watson's relinquished his right to collaterally attack his sentence through a § 2255 motion by executing a valid waiver of this right in his plea agreement.").

Therefore, "[t]he waiver may be challenged on the grounds that the defendant's guilty plea or waiver was not knowing or voluntary or that the waiver was the product of ineffective assistance of counsel."  *Shakir v. United States*, 2021 WL 7210370 at *2 (6th Cir. Sept. 20, 2021) (citing *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).  To determine whether the guily plea or waiver was made "knowingly and voluntarily[,]" the Court "'consider[s] all of the relevant circumstances surrounding' the plea or waiver."  *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

In *Fitzpatrick*, the court held that the "Petitioner's jury waiver and guilty plea were entered knowingly, voluntarily, and intelligently" because "[b]efore accepting Petitioner's jury waiver, the trial court reviewed the written waiver form with Petitioner, asked whether Petitioner had any questions about the form, ensured that Petitioner signed the form voluntarily, and confirmed that

Petitioner's trial counsel had discussed the form and its consequences with Petitioner." *Id.* at 639-40. This Court did the same during Santiago's Change of Plea Hearing on December 20, 2023:

> The Court: Now, Mr. Santiago, you've reviewed the entire plea agreement, correct?
>
> The Defendant: Yes, Ma'am.
>
> The Court: And again, it consists of 12 pages. You signed this after reviewing the change with your counsel on Monday, and then you signed it on the last page, correct?
>
> The Defendant: Yes.
>
> ***
>
> The Court: . . . Now, one other question or a couple more, Mr. Santiago. Do you need any more time to consult with your lawyer, Mr. Peterson, before I take your plea?
>
> The Defendant: No.
>
> The Court: All right. And again, has anyone attempted in any way to force you to plead guilty or otherwise threatened you?
>
> The Defendant: No.
>
> The Court: And aside what's set forth in the written 12-page plea agreement that you signed on Monday, 12/18, after the change was made to paragraph 21a, has anyone made any promises or assurances of any kind to get you to plead guilty?
>
> The Defendant: No.
>
> The Court: And, sir, are you pleading guilty of your own free will because you are guilty?
>
> The Defendant: Yes, ma'am.
>
> The Court: All right. Thank you. Then how do you now plead to the charge of possession of firearm and/or ammunition by convicted felon, in violation of Title 18 United States Code Section 922(g)(1), guilty or not guilty?
>
> The Defendant: Guilty.

(Transcript of Change of Plea Hearing, Dec. 20, 2023, Tr. at 7:5-7:15, 8:8-9:6.)

Santiago's own representations at the Change of Plea Hearing refute his present contention that Attorney Peterson rendered ineffective assistance of counsel by failing to explain the rights

Santiago waived by executing the plea agreement; Santiago attested to the Court that he reviewed the entire plea agreement with Attorney Peterson and that he did not need more time to consult Attorney Peterson.  And Santiago also expressly noted in his Plea Agreement that he was "satisfied with [the] assistance of counsel" and had "sufficient time and opportunity to discuss all aspects of the case in detail with [Attorney Peterson]."  (Doc. No. 23 at PageID# 72.)  Aside from his bare assertion in his Motion to Amend that he did not, in fact, understand the effect of his waiver, he presents no other evidence to bolster that assertion.  (Doc. No. 50 at PageID# 315.)[3]

Accordingly, the Court concludes that Attorney Peterson did not render ineffective assistance by allegedly failing to apprise Santiago of the effect of his waiver.

### 2.    Attorney Peterson did not render ineffective assistance of counsel by declining to make a *Bruen* Motion that had no chance of succeeding.

In his Motion, Santiago argues that his conviction under § 922(g)(1) is constitutionally defective because it violated his Second Amendment rights.  He claims that "the sentence that was imposed for the indictment, which charged him with a violation of § 922(g)(1) should be vacated under *Bruen*" because "his conduct comes within the plain text of the Second Amendment and is presumptively protected by the Constitution."  (Doc. No. 47-1 at PageID# 264, 267.)  According to Santiago, "[t]he Government has yet to meet its burden to show that the nation's historical tradition of firearm regulation has a 'distinctly similar' or even a 'relevantly similar' analog to § 922(g)(1)."  (*Id.* at PageID# 256.)[4]  In support, Santiago cites to a various 17th century statutes, contemporary law

---

[3] Although the Court finds that the waiver provision is enforceable, the Court notes that Santiago did not waive his underlying right to assert claims for ineffective assistance of counsel.  The waiver provision of the Plea Agreement expressly provides that "Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct."  (Doc. No. 23 at PageID# 68.)  This does not mean, of course, that his ineffective assistance of counsel claims succeed, but only that the Court must evaluate them on the merits.

[4] Santiago submits that the "parties disagree on [] whether defendant is part of 'the people' as that term appears in the Second Amendment."  (*Id.*)  The Government does not argue that Santiago is not "one of 'the people'" and instead assumes

review articles, and district court opinions, and he maintains that § 922(g)(1) imposes a greater burden on the Second Amendment right than that imposed at the founding because the historical record from colonial American and English common law shows that no law created a permanent and absolute restriction on the right to keep and bear arms.  (*Id.* at PageID#s 276-81.)

In its Opposition, the Government argues that his conviction under § 922(g)(1) did not violate his Second Amendment rights because the Sixth Circuit has held that § 922(g)(1) is facially constitutional in *United States v. Parham*, 119 F.4th 488 (6th Cir. 2024) and *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), and points to district court opinions from the Northern District of Ohio rejecting Second Amendment challenges to § 922(g)(1).  (*Id.* at PageID#s 296-99). The Government bolsters that contention by setting forth several historical sources indicating that "from the earliest days of the Republic to modern times, legislatures have disarmed individuals who could not be trusted with firearms."  (*Id.* at PageID#s 300-06.)  Finally, the Government maintains that "Santiago's criminal history contains violent and dangerous convictions[,]" including the following:

> In 2007, he was convicted of felonious assault after he shot another individual.  His time in the Department of Youth Services left him with a record of threats against others and fighting.  Even after release, he continued his violent streak by breaking into someone's house and trying to rob them with a fake gun. Santiago has weapons and other convictions, including disorderly conduct related to this case when he swung and hit a female victim.

(*Id.* at PageID#s 307-08) (citing Presentence Investigation Report, Doc. No. 41 at PageID#s 214-17.) The Government contends that these convictions doom his claim because they make him a "dangerous person" against whom § 922(g)(1) can be constitutionally applied. (Doc. No. 48 at PageID#s 308-09.)

---

that he is and disputes only the merits of his as-applied challenge to § 922(g)(1).  Therefore, the Court assumes that Santiago is one of "the people" whose right to bear arms is protected by the Second Amendment.

In his Motion to Amend, Santiago reasserts his *Bruen* defense through an ineffective assistance of counsel claim; he argues that Attorney Peterson was ineffective *because* he "had to fire Mr. Peterson before sentencing Because [sic] Santiago asked Mr. Peterson before and after his guilty change of plea to file the motion needed to file [sic] arguing his Second Amendment right." (*Id.*)  In its Opposition to Santiago's Motion to Amend, the Government responds that Attorney Peterson could not have deficiently represented Santiago in failing to file a motion objecting to the constitutionality of § 922(g)(1) because such a motion would have had "no chance of succeeding." (*Id.*)

The Court agrees with the Government.  For the reasons below, the Court concludes that Attorney Peterson did not provide ineffective assistance in declining to argue that § 922(g)(1) is unconstitutional as applied to Santiago because that defense lacks merit as Santiago is "dangerous." *See Sutton*, 645 F.3d at 755  (quoting *Greer*, 264 F.3d at 676) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"); *Lyons*, 1999 WL 1252916 at *3.[5]  Additionally, even if Attorney Peterson did render ineffective assistance of counsel by declining to make that argument, his inaction could not have prejudiced Santiago because Santiago received new counsel who also never attempted to advance his *Bruen* argument.

> **a)**      **Santiago's conviction under § 922(g)(1) is constitutional under** ***Bruen*** **because Santiago is "dangerous."**

Attorney Peterson's failure to object to the application of 18 U.S.C. § 922(g)(1) to Santiago was not ineffective assistance of counsel because under applicable Sixth Circuit precedent, Santiago is "dangerous," and therefore his attorney did not make an error in declining to make a non-meritorious argument.

---

[5] The Court additionally sets forth its basis for rejecting a series of other miscellaneous arguments Santiago makes on Pages 15-17 of his Motion in Section III.A.2.b. below. (Doc. No. 47-1 at PageID#s 273-275.)

The Second Amendment provides that "[a] well-regulated Militia, being necessary for the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const., amend. II.  The Second Amendment "codifie[s] a pre-existing 'individual right to keep and bear arms.'"  *United States v. Risner*, 129 F.4th 361, 366 (6th Cir. 2025) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008)).  However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  *Heller*, 554 U.S. at 626.  Thus, for the government to constitutionally limit an individual's "right to keep and bear arms," "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."  *Bruen*, 597 U.S. at 17.  That consistency exists if the new law is "consistent with the *principles* that underpin our regulatory tradition."  *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *Bruen*, 597 U.S. at 29) (emphasis added).  A reviewing court "must consider 'why and how' the modern law burdens the Second Amendment right and compare it to the 'why and how' of historical firearms regulations."  *United States v. Morton*, 123 F.4th 492, 496 (6th Cir. 2024) (quoting *Rahimi*, 602 U.S. at 692).  However, the modern law "need not be a "dead ringer" or a "historical twin" to its "historical precursors."  *Rahimi*, 602 U.S. at 692.

The statute at issue in Santiago's case, 18 U.S.C. § 922(g)(1), disarms convicted felons.  While Santiago urges the Court to find that § 922(g)(1) is not constitutional because it does not align with the nation's history and tradition of firearm regulation, Sixth Circuit precedent squarely forecloses that inquiry.  The Sixth Circuit has confirmed the facial constitutionality of 18 U.S.C. § 922(g)(1).  *See United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) ("[M]ost applications of § 922(g)(1) are constitutional, [so] the provision is not susceptible to a facial challenge.").  And while "§ 922(g)(1) is constitutional on its face[,]" it is also constitutional when "applied to *dangerous* people."  *Id.* at 662-63 (emphasis added); *United States v. Berry*, 2025 WL 1082376 at *1 (6th Cir. Apr. 10,

2025) (citing *Williams*, 113 F.4th at 663) ("§ 922(g)(1) is constitutional when applied to dangerous persons.").

In making the as-applied dangerousness determination under *Williams*, "courts—much like the officials of old—must focus on each individual's specific characteristics.  That necessarily requires considering the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1)."  113 F.4th at 658-59.

*Williams* classifies a defendant's crimes into three groups by order of severity for analyzing as-applied challenges to § 922(g)(1).  *See id.* at 657.  "The first such group is crimes against the person[,]" which include "dangerous and violent crimes like murder rape, assault, and robbery."  *Id.* (citing *Offense Against the Person*, Black's Law Dictionary (12th ed. 2024)).  A defendant who has committed a crime in this group faces an "extremely heavy" burden to overcome a "presumption of dangerousness."  *Id.*; *see also Berry*, 2025 WL 1082376 at *1.  "[T]here is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."  *Williams*, 113 F.4th at 658.  The second category of crimes includes those that are "not strictly crimes against the person" but that still "pose a significant threat of danger," such as "drug trafficking" and "burglary."  *Id.* at 669.  They "put someone's safety at risk, and thus, justify a finding of danger."  *Id.*  In the third category are crimes that "cause no physical harm to another person or to the community," such as "mail fraud."  *Id.*

Here, before Santiago's conviction in this Court under § 922(g)(1), he had been convicted several times for violent crimes, including burglary, robbery, and kidnapping.  (Doc. No. 51 at PageID# 379-82.)  He admitted to these convictions in the Plea Agreement.  (Doc. No. 23 at PageID# 71.)  The Presentence Investigation Report also details these convictions.  (Doc. No. 41 at PageID#s

209-18.) And, as noted above, in 2007 Santiago was convicted of felonious assault and in 2009 he was convicted of assault. (*Id.* at PageID#s 214-15.)

His convictions for felonious assault, assault, robbery, burglary, and kidnapping are dispositive of this analysis. At common law, "'assault' was defined as the 'attempt or offer to beat another, without touching him[.]'" *United States v. McCulligan*, 256 F.3d 97, 102 (3d Cir. 2001) (citation omitted); *United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009) (same). The Court in *Williams* expressly noted that assault, robbery, and burglary are "crimes against the person" and therefore make Santiago presumptively dangerous. *Williams*, 113 F.4th at 659 (citing *Taylor v. United States*, 495 U.S. 575, 588 (1990) ("Courts have recognized that burglary is dangerous because it 'creates the possibility of a violent confrontation between the offender and occupant.'"); *id.* at 658 ("This historical category was filled with dangerous and violent crimes like murder, rape, assault, and robbery."). And like those crimes, there is no dispute that kidnapping can "put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659.

Therefore, Santiago is presumptively dangerous and faces an "extremely heavy" burden to show that he is not dangerous. *Id.* at 637. Yet Santiago has presented no evidence to rebut the presumption that he is dangerous. Having failed to overcome the "extremely heavy" presumption of dangerousness established in *Williams*, the Court concludes that Santiago is dangerous and therefore concludes that applying § 922(g)(1) to him does not violate his right to keep and bear arms under the Second Amendment.

Accordingly, the Court rejects Santiago's argument that Attorney Peterson was constitutionally ineffective by declining to raise that argument because that argument could not succeed.[6]

---

[6] The Court also notes that *Williams*, which was decided on August 23, 2024, was governing law when Santiago was convicted on September 12, 2024.

**b)** **The Court rejects Santiago's other miscellaneous arguments.**

Also in his Motion, Santiago asserts several other meritless arguments. Santiago claims he "kept" the weapon within the meaning of "keep and bear arms" because he was a shooting victim in April 2020 and felt it necessary to protect himself (*Id.* at PageID# 273); the Government never prepared a charging document reflecting that Santiago was in possession of a firearm while on parole; Santiago had never been convicted of harming anyone with the firearm or using it to intimidate anyone; Santiago was not required to reveal the purpose of his owning the firearm; and Santiago asks the Court to only consider conduct alleged in the indictment to determine whether it is covered by the Second Amendment, and not to consider that the firearm was stolen or that he "had a violent offense in his past criminal history" because "none of the facts mentioned were ever written or mentioned in the Second Amendment's plain text." (Doc No. 47-1 at PageID#s 273-75).

The Court rejects each of these arguments as largely irrelevant or misstatements of the law. The Government has never disputed that Santiago "kept" the "stolen Ruger LCPII semi-automatic pistol" or the "Glock 17, 9mm semi-automatic pistol, serial no. AEPK611" because, indeed, that is the very basis for Santiago's underlying conviction. (Doc. No. 23 at PageID#s 70-71.) It is also irrelevant whether the Government prepared a charging document reflecting that Santiago possessed such a firearm while on parole because, as noted in his Plea Agreement, he conceded that it was "true" that he was "arrested while in possession of firearms" which formed the basis for his conviction. (*Id.* at PageID# 69.) It is also irrelevant whether he had previously harmed anybody *with a firearm*, because, as noted above, the only relevant inquiry is whether he is "dangerous" which is not limited to previously harming someone with a firearm. *See, e.g.*, *Williams*, 113 F.4th at 657 (noting that the fact that the defendant "robbed two people at gunpoint, stealing case, a watch, and clothing" was alone sufficient to support a constitutional conviction under § 922(g)(1)). Santiago also was not

18

convicted for failing to reveal his motivation behind keeping a firearm, but for knowingly possessing one, *see* 18 U.S.C. § 922(g)(1) (requiring that the Defendant "knowingly possessed a firearm and/or ammunition."), so his subjective motivations are likewise irrelevant.  Lastly, the Court also rejects that it should not consider his past criminal history in evaluating whether he is "dangerous" because in *Williams*, the Sixth Circuit explicitly instructed courts to consider the defendant's criminal record in making its dangerousness determination: "Consider Williams's criminal record.  He has two felony counts of aggravated robbery.  Robbery is a common-law crime against the person."  *Williams*, 113 F.4th at 662.  Thus, none of Santiago's additional contentions support his conclusion that his *Bruen* defense would have had any merit, so it cannot be the basis for an ineffective assistance of counsel claim against Attorney Peterson.

c)   **Even if Attorney Peterson rendered ineffective assistance of counsel by declining to make a *Bruen* motion, Santiago cannot show that such a failure was prejudicial.**

Assuming that Attorney Peterson had rendered ineffective assistance by declining to make the above *Bruen* arguments, that deficiency still could not have prejudiced Santiago because Santiago had the opportunity to remedy the alleged deficiency and chose not to do so.  After the Court appointed Attorney Johnson to replace Attorney Peterson, Santiago could have sought to withdraw his guilty plea so that he could assert his argument that § 922(g) is unconstitutional as applied to him. *See* Fed. R. Crim. P. 11(d)(2) ("A defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal."); *United States v. Davis*, 2015 WL 5042649 at *17 (E.D. Ky. Aug. 25, 2015) ("If a court has accepted a defendant's plea but not yet imposed sentence, then Rule 11(d)(2) allows a defendant to withdraw his guilty plea for 'a fair and just reason.'").

It is puzzling how Santiago can maintain that his old counsel's ineffective representation caused his constitutionally defective conviction when Santiago actually had the opportunity to 'fix'

19

Attorney Peterson's alleged 'mistake' yet Santiago voluntarily chose not to avail himself of that opportunity after receiving a *new* lawyer.  Santiago apparently realized Attorney Peterson was 'ineffective,' fired him, and then did nothing to undo Attorney Peterson's 'mistakes.'  That too is dispositive because  Santiago's intervening, voluntary decision  to 'stay the course' that Attorney Peterson had set in motion despite ample opportunity to attempt to withdraw his plea breaks the necessary causal connection between Attorney Peterson's supposed error and the result of Santiago's proceeding, i.e., his conviction.  *See Carson v. United States*, 88 F.4th 633, 638 (6th Cir. 2023) (quoting *Strickland*, 466 U.S. at 694)) ("[T]he defendant [] must show prejudice: 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'").  In other words, the "likelihood of a different result" cannot be substantial because Santiago had the opportunity to have new counsel attempt to have his guilty plea withdrawn so as to allow the filing of a *Bruen* motion but he chose not to do so.  *See Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

Accordingly, Santiago's Motion to Amend (Doc. No. 50) based on ineffective assistance of counsel is denied as futile because neither of his ineffective assistance of counsel claims has merit.

**B.     Santiago's Motion is denied because he waived his right to collaterally attack his conviction under § 2255 and because his *Bruen* arguments lack merit.**

Having rejected his two proffered ineffective assistance of counsel claims set forth in his Motion to Amend, the Court now turns to Santiago's remaining, underlying Motion.  (Doc. No. 47.) The Motion only argues that his conviction was unconstitutional because § 922(g)(1) cannot be constitutionally applied to him.  (*Id.*)  But this Motion too must be denied for two (2) reasons.

First, as explained in Section III.A.1. above, Santiago's Plea Agreement included an enforceable waiver that foreclosed his right to collaterally attack his conviction through § 2255 on grounds other than ineffective assistance of counsel.  (Plea Agreement, Doc. No. 23 at PageID# 68.)

Second, as explained in Section III.A.2. above, Santiago's *Bruen* arguments lack merit because under the Sixth Circuit precedent in *Williams*, he is "dangerous." In that section, the Court already analyzed the merits of the arguments set forth in his Motion and determined that they had no chance of succeeding, so the Court need not duplicate its analysis here.

Accordingly, Santiago's Motion (Doc. No. 47) based on the unconstitutionality of his conviction as violating the Second Amendment is denied.

## IV.     Conclusion

Accordingly, Defendant-Petitioner Santiago's Motion (Doc. No. 47) and Motion to Amend (Doc. No. 50) are DENIED. Further, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**


                                                     *s/Pamela A. Barker*
                                                     PAMELA A. BARKER
Date:  January 7, 2026                               U. S. DISTRICT JUDGE